STATE of Minnesota ex rel. NEIGHBORS ORGANIZED IN SUPPORT OF the ENVIRONMENT, et al., Appellants,

v.

Joseph DOTTY, et al., City of Breezy Point, Donald Volner, d.b.a. Breezy Edgewater Trap & Skeet Range, Respondents.

No. C2–86–952.

Court of Appeals of Minnesota.

Nov. 10, 1986.

John Remington Graham, Milloy & Graham, Brainerd, for appellants.

Thomas A. Fitzpatrick, Fitzpatrick, Larson, Fitzpatrick & Nelson, Patrick M. Krueger, Borden, Steinbauer, Rathke & Krueger, John W. Person, Breen and Person, Ltd., Brainerd, for respondents.

Heard, considered, and decided by PARKER, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

Appellants, a non-profit organization entitled Neighbors Organized in Support of the Environment (NOISE), and Lee and Tiny Frost, as the representatives of a proposed class action, appeal from an order denying a temporary injunction and an order denying certification of a class action. Appellants brought this action against respondents Joseph Dotty, Robert Zilge, and Donald L. Volner to enjoin them from operating a trap and skeet club in the City of Breezy Point, Minnesota. The City was also named as a defendant for its role in granting respondents a conditional use permit which allowed the Club to operate within specific periods. The trial court denied the temporary injunction, declined to certify the action as a class action, and ruled that Donald Volner could operate the Club

pursuant to the conditional use permit. We affirm.

## FACTS

Joseph Dotty and Robert Zilge own a trap and skeet club (the Club) situated on a seventy-five acre parcel off of a highway, one-half mile from Breezy Point Resort, in the City of Breezy Point. Before purchasing the land upon which the Club is located, Dotty and Zilge petitioned the city council to have the land rezoned from residential to commercial use. They hired a "noise consultant" to conduct measurements of the sound levels which would be generated by the Club. On December 11, 1981, the consultant took decibel readings at three different locations, ranging from 30 to 52.4 decibels. These results were submitted with the petition.

The council considered the petition, held a public meeting, and heard supporting and opposing arguments at various times between January 1982 and June 1982. The council granted the zoning request, but postponed granting a conditional use permit until a trial day of firing could be conducted to determine the extent of the noise generated by the Club. Finally, on June 7, 1982, the council granted Dotty and Zilge a conditional use permit. No appeal was taken from the grant of the permit. Dotty and Zilge then made improvements upon the property for the trap and skeet club.

On July 8, 1985, appellants brought this action to enjoin the operation of the Club. They claimed that the noise was intolerable—reducing land values and interfering with the "quietude" of appellants. Appellants alleged that the noise violated the Environmental Rights Act. Minn.Stat. § 116B.02, subd. 4 (1984).

> Appellants sought to certify as a class:
> Owners of real estate situate within the corporate limits of the City of Breezy Point, this State, who object to the activities of the Defendants hereinafter complained of.

Appellants also moved to amend their complaint to add Donald Volner, who was leasing the Club from Dotty and Zilge, as a party defendant. Appellants claimed that the conditional use permit issued to Dotty and Zilge was a personal license only, and thus Volner was illegally operating the Club.

The trial court refused to certify the case a class action, denied the injunction, and ruled that Volner was lawfully operating the Club. The court then offered to set the trial on for an expedited hearing date, but appellants refused and brought this appeal.

## ISSUES

1. Did the trial court err in declining to certify the case as a class action?

2. Did the trial court clearly abuse its discretion in denying a temporary injunction pending a trial on the merits?

3. Did the trial court properly conclude that respondent Volner could operate the Club pursuant to the conditional use permit issued to respondents Dotty and Zilge?

## ANALYSIS

### I. Class Action

■ Appellants sought to certify as a class of plaintiffs:

> Owners of real estate situate within the corporate limits of the City of Breezy Point, this State, who object to the activities of the Defendants hereinafter complained of.

Plaintiffs desiring to maintain a class action must, as soon as practicable after commencing the class action, petition the court to certify the case as a class action—i.e., determine whether the plaintiffs are entitled to represent a class. *Beckman v. St. Louis County Board of Commissioners,* 308 Minn. 129, 241 N.W.2d 302 (1976). In making this determination, the court first considers whether the plaintiffs have met the threshold requirements to maintain a class action under Rule 23.01. The rule provides:

> [M]embers of a class may sue or be sued as representative parties on behalf of all only if

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Minn.R.Civ.P 23.01. The rule does not contain specific guidelines indicating a maximum or minimum number of parties required to maintain a class action.

Appellants contend that they meet the requirements of Rule 23.01 and, thus, that the trial court erred in refusing to certifying the case as a class action. The trial court held that appellants did not meet requirements (1) and (3)—numerosity and typicality.

The trial court found that appellants did not meet the requirement for numerosity, stating:

> By organizing a group and forming a corporation, i.e., NOISE, plaintiffs have shown that the joinder of all interested members is not impracticable.

In determining that the requirement of typicality was not met, the court stated:

> [P]laintiffs' claims will be better focused and more clearly articulated, if those actually affected by the noise are the members of the party, rather than having the party consist of individuals with varying interests.

■ We agree. Clearly all persons owning real estate in Breezy Point who merely "object" to the Club is too broadly defined to ensure that the members will have the necessary typicality under Rule 23.01. As to numerosity, we agree that joinder does not appear to be impracticable, as several persons interested in obtaining an injunction have formed an organization (NOISE) specifically for that purpose. Thus, since all of the requirements of Rule 23.01 have not been met, the trial court properly refused to certify the action as a class action.

## II. Temporary Injunction

■ The Environmental Rights Act (the Act) provides a civil remedy to protect, preserve, and enhance natural resources in Minnesota. Minn.Stat. § 116B.03. "Quietude" is included in the definition of "natural resources." § 116B.02, subd. 4. To obtain injunctive relief, a plaintiff must make a prima facie showing of a protectable natural resource and that the conduct complained of constitutes pollution, impairment, or destruction of that natural resource. *County of Freeborn v. Bryson,* 297 Minn. 218, 210 N.W.2d 290 (1973); *see* § 116B.02, subds. 4, 5. Section 116B.02 describes "pollution, impairment or destruction," as:

> [A]ny conduct by any person which violates, or is likely to violate, any environmental quality standard, * * * or any conduct which materially adversely affects or is likely to materially adversely affect the environment.

Minn.Stat. § 116B.02, subd. 5.

■ Appellants claim that they established a prima facie case showing a violation of the Act, but that respondents did not offer any proof rebutting appellants' position. Thus, appellants claim that the trial court erred in refusing to grant the injunction. Appellants cite *MPIRG v. White Bear Rod & Gun Club,* 257 N.W.2d 762 (Minn.1977), in which the court stated:

> [I]n the absence of unusual or extraordinary factors, the Minnesota Environmental Rights Act requires that a trial court enjoin environmentally destructive conduct if a feasible and prudent alternative is shown.

*Id.* at 769. The language in *MPIRG,* however, referred to a permanent injunction issued on the merits, not a temporary injunction. In fact, the trial court in *MPIRG* also denied a temporary injunction. The proper standard for determining appellants' right to a temporary injunction is not whether appellants made a prima facie showing of a violation of the Act, but rather, whether the trial court clearly abused its discretion in denying the injunction. To make this determination, this court reviews

the trial court's application of the test set out in *Dahlberg Brothers, Inc. v. Ford Motor Co.*, 272 Minn. 264, 137 N.W.2d 314 (1965).

In reviewing the trial court's action, this court views the facts alleged in the pleadings and affidavits as favorably as possible to the party prevailing below. *Cramond v. AFL–CIO*, 267 Minn. 229, 234, 126 N.W.2d 252, 257 (1964). The only issue is whether the trial court abused its discretion by disregarding either facts or applicable principles of equity. *Id.* Appellants must have established an inadequate remedy at law and the existence of irreparable harm resulting from the denial of the injunction. *Cherne Industrial, Inc. v. Grounds & Associates, Inc.*, 278 N.W.2d 81, 92 (Minn.1979). Using the *Dahlberg* test, the court must consider:

(1) the nature of the relationship between the parties before the dispute giving rise to the request for relief;

(2) the harm to be suffered by the moving party if the preliminary injunction is denied as compared to that inflicted on the non-moving party if the injunction issues pending trial;

(3) the likelihood of success on the merits;

(4) the public interest;

(5) administrative burdens in enforcing a temporary decree.

*Dahlberg*, 272 Minn. at 274–275, 137 N.W.2d at 321–322.

In discussing the relationship between the parties, the trial court emphasized preserving the status quo, citing *Pickering v. Pasco Marketing, Inc.*, 303 Minn. 442, 446, 228 N.W.2d 562, 565 (1975). The court noted that respondents were operating a legitimate business interest, and that despite appellants' alleged harm, they delayed filing the action until the Club had operated two full seasons.

The court found it significant that appellants not only had tolerated the noise for the first two years, but also had admitted that the noise level had diminished in the third year.

In determining the appellants' chances of prevailing on the merits at trial, the court cited *MPIRG*, stating that at trial, a balancing test would be used to determine whether the utility of respondents' conduct outweighed any harm to appellants. Upon reviewing the trial court's application of this test, we conclude that the court did not abuse its discretion in denying the injunction.

### III. Conditional Use Permit

Appellants claim that Volner, a lessee, could not operate the Club under the conditional use permit issued to Dotty and Zilge. They claim that the permit is a personal license only, and that it does not run with the land to Volner's benefit. The trial court ruled that Volner was lawfully operating the Club, since Minn.Stat. § 394.301 (1984) provides that a conditional use permit continues until its provisions are violated. *See Orme v. Atlas Gas & Oil Co.*, 217 Minn. 27, 13 N.W.2d 757 (1944) (zoning imposes restrictions on use of land itself which attach to and run with the land). Thus, the court correctly held that Volner could operate the Club pursuant to the permit.

### DECISION

We affirm the decision of the trial court.